Argued and submitted September 20, 2004, reversed and remanded for
reconsideration March 23, 2005

## Ron MANNING
### and Kelly Manning,
*Petitioners,*

*v.*

## LAND CONSERVATION
## AND DEVELOPMENT COMMISSION,
*Respondent.*

### 02-WKTASK-01447; A120530

109 P3d 376

William C. Cox argued the cause for petitioners. With him
on the brief was Gary P. Shepherd.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Petitioners seek review of a Land Conservation and Development Commission (LCDC) order that affirmed Marion County Ordinance 1160, which the county adopted under a "work task"[1] as part of the county's periodic review of its comprehensive plans and land use regulations. ORS 197.628 to 197.650.[2] In Ordinance 1160, the county designated petitioners' property for agricultural use. When the property was previously within the City of St. Paul's urban growth boundary (UGB), it bore the planning designation "Urban Transition/Farm." That designation was a Marion County zone that was intended to encourage continued commercial agricultural use in areas planned for future urban development. After the city removed petitioners' property from the UGB, thus returning it to county land use planning jurisdiction, the county designated the property for exclusive farm use (EFU). Petitioners challenge LCDC's approval of that designation. We reverse and remand.

This controversy was twice before the Land Use Board of Appeals (LUBA). *See Manning v. Marion County*, 42 Or LUBA 56 (2002) (*Manning I*); *Manning v. Marion County*, 45 Or LUBA 1 (2003) (*Manning II*). In the first case, LUBA considered petitioners' challenge to county Ordinance 1152, which applied a "Primary Agriculture" use designation to their property. Because that zone was intended for property that would be maintained for long-term agricultural production, the change meant that designating petitioners' property for future residential or industrial use was not appropriate.

---

[1] *See* ORS 197.629 (discussing the phases of periodic review); ORS 197.633 (same). A "work task" is part of the "work program" that a local planning jurisdiction undertakes in order to bring its comprehensive plan and other land use controls into compliance with statewide land use planning goals. *See* OAR 660-025-0020.

[2] ORS 197.628(1) provides:

"It is the policy of the State of Oregon to require the periodic review of comprehensive plans and land use regulations in order to respond to changes in local, regional and state conditions to ensure that the plans and regulations remain in compliance with the statewide planning goals adopted pursuant to ORS 197.230, and to ensure that the plans and regulations make adequate provision for needed housing, employment, transportation and public facilities and services."

Petitioners pointed out that their property was bordered on the north and east by land within the St. Paul city limits and argued that their property should be zoned for rural residential use. LUBA determined that the county's findings were inadequate because the county failed to consider any designation other than Primary Agriculture for petitioners' property. *Manning I*, 42 Or LUBA at 68.

Shortly after LUBA remanded the county's decision, the Department of Land Conservation and Development (DLCD) also remanded the same ordinance, which the county had submitted to it pursuant to periodic review. DLCD instructed the county to make the findings required by LUBA and to take other action under periodic review not related to judicial review. Thus, LUBA's and DLCD's remands of the county's ordinance effectively reopened the matter of the appropriate zoning of petitioners' property based on the record already developed. Neither LUBA nor DLCD required the county to reopen the evidentiary record, as petitioners now assert was necessary. LUBA's decision rested on its conclusion that the county failed to *consider* the appropriate use designation for the property, not that it lacked sufficient evidence to make that determination. *See Manning I*, 42 Or LUBA at 68-69.

The county responded to the remands by adopting Ordinance 1160, which included findings justifying the Primary Agriculture[3] designation and EFU zoning for petitioners' property. The county did not hold a new hearing, nor did it provide petitioners with notice of an opportunity to comment on the revisions before it. Rather, it relied on the record developed in support of Ordinance 1152. Petitioners sought review of Ordinance 1160 before LUBA, which dismissed the matter on the ground that it lacked authority to proceed because the adoption of the ordinance was part of the county's ongoing periodic review process. *Manning II*, 45 Or LUBA at 4-5. LUBA stated that "LCDC has exclusive jurisdiction to review the evaluation, work program, and all work program tasks for compliance with the statewide planning

---

[3] As we describe below, "Primary Agriculture" is a Marion County land use designation that has specific criteria in addition to the EFU designation. *See* 198 Or App at 495.

goals." *Id.* Petitioners did not seek judicial review of that decision.

Petitioners appeared before LCDC on its review of Ordinance 1160 and again asserted that the property should not be designated Primary Agriculture or zoned EFU. They argued that the county committed both substantive and procedural errors in making the designation. LCDC responded to petitioners' substantive concerns by noting the uncontested fact that the property consists of Class II and III soils, which places it within the Goal 3 (Agricultural Lands) definition of agricultural land.[4] LCDC viewed the goal as automatically making Class I through IV soils agricultural land and also including "other lands which are suitable for farm use." The "other lands" portion of the goal definition thus expands rather than limits the definition of agricultural land. For that reason, LCDC rejected petitioners' argument that whether the land is currently farmed is relevant to the designation. It therefore concluded that "the county's decision to zone the land EFU is consistent with the goals."

LCDC also rejected petitioners' claim that they were entitled to an exception to the goals to permit nonagricultural use of the land. Goal 2, Part II, provides, in part, that a "local government *may* adopt an exception to a goal" when certain enumerated conditions and justifications are present. (Emphasis added.) The goal thus permits the local government to make an exception but does not require it to do so. *See also* ORS 197.732(1) (also providing that a "local government may adopt an exception to a goal" if certain conditions are met).

Petitioners also argued that the county failed to follow the appropriate procedure when it performed its work task responsibilities and that it violated petitioners' due

---

[4] Goal 3 defines agricultural land in western Oregon as land of

"predominantly Class I, II, III and IV soils * * * as identified in the Soil Capability Classification System of the United States Soil Conservation Service, and other lands which are suitable for farm use taking into consideration soil fertility, suitability for grazing, climatic conditions, existing and future availability of water for farm irrigation purposes, existing land-use patterns, technological and energy inputs required, or accepted farming practices."

process rights "by refusing requests for additional evidentiary hearings to contest the untrue and therefore unrevealed information. The untrue information contains intentional mistruths [*sic*] about farming activity taking place on the subject property." LCDC also rejected that challenge, explaining that DLCD found no violation of a goal or rule provision. LCDC apparently viewed the substance of petitioners' objection as procedural and concluded that the objection was outside LCDC's review authority "and properly resides with LUBA." Petitioners sought review of LCDC's decision in this court.

■ On review, petitioners argue that the LCDC's approval of the county's work task violates OAR 660-025-0080(2)(b) because the county provided no opportunity for petitioners to comment following the remands from DLCD and LUBA.[5] LCDC counters that the proceeding leading to the adoption of Ordinance 1152 provided petitioners a hearing before the county on whether their land should be excepted from Goal 3. It also asserts that LUBA's and DLCD's remands did not contemplate a second hearing because the evidence that was to be the basis for the county's additional findings was already in the record.

LCDC does not cite any legal authority supporting its view that the county's hearing before the adoption of Ordinance 1152 was part of, or should be considered to be part of, the county's periodic review effort. The county sought to add the issue of the property removed from the St. Paul UGB to its periodic review work tasks some months after LUBA issued its decision on Ordinance 1152. LCDC also does not argue that it has no responsibility to review local government

---

[5] OAR 660-025-0080(2) provides, in part:

"Each local government shall review its citizen involvement program and assure that there is an adequate process for citizen involvement in all phases of the periodic review process. Citizen involvement opportunities shall, at a minimum, include:

"* * * * *

"(b) Interested persons shall have the opportunity to comment in writing in advance of or at one or more hearings on a periodic review work task. Citizens and other interested persons shall have the opportunity to present comments orally at one or more hearings on a periodic review work task. Citizens and other interested persons shall receive a response to their comments at or following the hearing on a work task."

work task efforts for compliance with the Goal 2 requirement that "[o]pportunities shall be provided for review and comment by citizens and affected governmental units during preparation, review and revision of plans and implementation ordinances." Indeed, OAR 660-025-0080(2)(b), which LCDC adopted to implement Goal 2, requires local governments to provide an opportunity for comment at one or more hearings conducted on work tasks under periodic review. Nothing in the goals, rules, or statutes permits the county to treat a hearing conducted for a separate purpose as fulfilling that requirement. We therefore agree with petitioners that LCDC erred in approving a county work task when the county failed to comply with OAR 660-025-0080(2)(b).

■ The remaining question is whether LCDC's error requires us to reverse its order and remand the case for reconsideration. We conclude that it does because the county's failure to provide a hearing prevented petitioners from adequately presenting their position on the remaining issues that they raise on judicial review. Although those issues would not in themselves require reversal based on the present record, the lack of a hearing means that the county did not base its decisions on a complete record. As a result, the county has not given the issues that petitioners raise the consideration that the rules require it to give them; LCDC's approval of the county's decision based on an incomplete record was legal error that requires a remand. ORS 183.482(8)(a). We focus our discussion of the second and third assignments of error on those issues that remain for the county to decide.

In their second assignment of error, petitioners argue that substantial evidence did not support the county's decision to designate their property as "Primary Agriculture." LCDC treats that assignment as attacking the designation of the property as EFU and notes that, because the land is entirely Class II and III soil types, it meets the Goal 3 definition of agricultural land. However, the county's Primary Agriculture designation is a specific EFU zone that is based on several criteria in addition to soil types. The purpose of the designation is to identify land that is "in large

commercial farm units" and that is "intended to be maintained for long term agricultural production." "Primary Agriculture" land is characterized by:

"a. Soils that are suitable for agricultural production using accepted farming practices, especially Class I-IV soils.

"b. Areas of open land that are relatively free [from] non-farm conflicts. Areas that are still capable of being farmed.

"c. Areas that are presently in farm production or are capable of being farmed now or in the future.

"d. Those other lands that are necessary to protect farm uses by limiting adjoining non-farm activities."

Marion County Comprehensive Land Use Plan 14, *quoted in Manning I*, 42 Or LUBA at 64-65. The fact that petitioners' property qualifies as EFU land based on its soil types, thus, is only one of the four criteria for determining whether the property qualifies as "Primary Agriculture." In finding that petitioners' property satisfied those criteria, the county did not consider evidence of the situation that existed at the time of its decision but, instead, relied on the record made on Ordinance 1152. That record was necessarily based on facts that existed before the remands from LUBA and DLCD and, thus, before the county added the issue of the property to its periodic review work tasks. The county also did not provide a hearing at which petitioners could argue that the existing record did not support the "Primary Agriculture" designation. Those failures prejudiced petitioners and require LCDC to remand that issue to the county.

In their third assignment of error, petitioners argue that they are entitled to an exception from the goals for their property. They first assert that there is an existing exception that continued in effect after the city removed the property from the St. Paul UGB. They next assert that, even if there is no existing exception, LCDC erred in affirming the county's denial of their request for a new exception. LCDC dismissed petitioners' arguments rather summarily, stating that petitioners did not "identify any goal or rule provision that the county has violated" and that "the substance of this exception

is outside the scope of the commission's review authority, and properly resides with LUBA."

We disagree with LCDC's characterizations of petitioners' arguments. Petitioners asserted that their property remains subject to an exception that they believe was taken when the land was included in the St. Paul UGB and zoned Urban Transition/Farm. Petitioners' statements and arguments articulate an issue that is within LCDC's jurisdiction. They explained that,

> "[b]eing within the City of St. Paul's UGB, the Manning property was for decades not considered agricultural land. By law, the property could not have been included in the UGB and zoned urban transitional without having been the subject of an exception. * * * There is no local or state provision allowing the property's status as exception land to be taken away by the government acting to remove the property from the UGB. Status as exception land is a property right belonging to the property owner. Just because St. Paul does not want the property within its UGB does not affect or otherwise delete the status as exception land."

The problem with that argument is that petitioners do not point to evidence of any prior proposed exception in the record or suggest that they could provide evidence outside of the record that shows that there was an exception. The mere fact that the property was formerly within the UGB is not evidence that there was an exception from the goals, and petitioners have failed to show that the county erred in finding that there was no existing exception.

In its findings supporting Ordinance 1160, the county said that the property was brought into the St. Paul UGB in 1985 as the result of a city-identified need for additional industrial land. It retained, nonetheless, its EFU zoning until 1990, when it was rezoned "Urban Transition/Farm." The county stated that there was no evidence that an exception was taken when the property was added to the St. Paul UGB. According to the county, no exception would be required under OAR 660-014-0000 to 660-014-0040 because an exception is not required for the establishment of a UGB around or including portions of an incorporated city. It then found:

"If an exception were taken, however, it was for industrial land, not residential. Once the property was no longer needed by the city to achieve its industrial goals and was removed from the UGB, any previous goal exception would no longer apply. If no goal exception has been taken, that action would be consistent [with] application of Goal 14 and the administrative rules to not require a goal exception to any establishment of a UGB that is undertaken to meet the requirements of Goal 14. In either case, a goal exception no longer exists for this property and a new one would have to be taken for the property to be designated other than agriculture."

The county then went on to reject petitioners' request for a Goal 3 exception for the property with a relatively detailed explanation of why a new exception for the property would not be justified.

The fact that petitioners fail to cite any evidence that would support a finding that there was a prior exception for their property makes it unnecessary to decide whether an exception, once taken, may be removed without following the formalities and addressing the criteria associated with granting the exception. That question must await a case that actually presents it. Because there also is no reason to believe that there is additional evidence available outside this record as to that issue, the county's failure to provide a hearing was harmless as to the existence of a prior exception.

The county's failure was not harmless, however, as to whether it should grant a new exception. We agree with LCDC that, on the existing record, LCDC was under no obligation to overturn Marion County's rejection of petitioners' request for an exception to Goal 3 for the property. We are aware of no existing authority and see nothing in Goal 2, the rules governing exceptions, or ORS 197.732 that requires a local government to take an exception to a goal. Evidence that an exception may be justified does not require the county to grant an exception. Goal 2 and ORS 197.732 provide that an exception *may* be granted on showing certain conditions, not that it must. However, before deciding whether to grant an exception, the county must provide an opportunity for the requesting party to make a complete record and to argue in support of the exception, and the county must consider that

record and argument in making its decision. Because the county failed to conduct a hearing before adopting Ordinance 1160, the record and argument were not complete. The lack of a hearing thus was error and was not harmless.

Reversed and remanded for reconsideration.